FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

00 JAN -7 PM 2: 44

U.S. DISTRICT COURT
N.D. OF ALABAMA

LESLIE CASE,                          )

         Plaintiff ,                  )

                                      )

    vs.                               )        CV 99-L-0017-NE

                                      )

HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY,                    )

         Defendant.                   )

                                      )

                                      )

ENTERED

JAN 07 2000

## MEMORANDUM OPINION

This cause comes before the court at the motion docket held on

December 22, 1999, on defendant's Motion for Summary Judgment filed

June 9, 1999.   After careful consideration of the briefs and

evidentiary materials submitted, this court finds, for the reasons

discussed below, that defendant's motion is due to be granted.

### Facts

Plaintiff was employed as a truck driver by Wal-Mart Stores,

Inc.  He obtained through payroll deduction, a long-term disability

insurance plan with defendant, Hartford Life & Accident Insurance

Company.  Among  other  things,  the  plan  vests  Hartford  with

20

discretionary authority to determine "eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."

On January 11, 1997, while driving and pulling an empty tractor trailer, plaintiff injured his lower back and the L-4 and L-5 disc areas.  This injury required surgery on his lower back. Plaintiff has not returned to work in any capacity since his work accident of January 11, 1997.  On February 19, 1997, Mr. Case filed a claim with Hartford seeking long-term disability income benefits, claiming that he suffered from back pain, as a result of bouncing while driving his tractor trailer truck and that the pain in his back rendered him unable to work. The plan defines "total disability" to mean that during the elimination period and the next twelve months, the beneficiary is prevented "from performing the essential duties of his occupation" or, after that time, is "prevented from performing the essential duties of any occupation for which [he is] qualified by education, training or experience." Based on an MRI performed January 17, 1997, Hartford approved plaintiff's application and paid long-term disability benefits beginning April 11, 1997.  He received benefits from that date until March 31, 1998.[1]

_____

[1]Parts of these benefits were offset by worker's compensation payments.

By letter dated April 6, 1998, plaintiff was informed that, upon review of all medical records received through that date, Hartford found that plaintiff was no longer "totally disabled" under the terms of the plan and that no long-term disability benefits would be paid beyond March 31, 1998.  This determination was based on the opinions of Dr. Charles Clark, who performed a lumbar discectomy on plaintiff and followed plaintiff post operatively and prescribed rehabilitation,  and Mr. Dave Bledsoe, an OTR who performed a functional capacities evaluation on plaintiff at Dr. Clark's request. Both individuals stated the opinion that plaintiff could return to his regular job.  Dr. Clark also placed permanent restrictions on plaintiff of no prolonged bending, stooping, climbing, or lifting of more than 30 pounds. Hartford also had before it at the time of its determination the results of a Department of Transportation Physical Examination of Drivers, performed October 20, 1997.  The examining doctor reported that plaintiff was not qualified to perform his job because he complained of major back pain in "rough road riding."

With the denial letter, plaintiff received literature regarding seating devices that he could purchase to provide back support and comfort during prolonged driving along with a check for $150.00 to assist in his purchasing such a device.  Plaintiff has not returned to work since his injury of January 11, 1997, although

he has cashed the $150.00 check.

Plaintiff returned to Dr. Clark on April 16, 1998, and for the first time, Dr. Clark expressed the opinion that plaintiff would not be able to return to work as a truck driver.  Plaintiff once again saw Dr. Clark on June 15, 1998, to review the results of an earlier MRI scan.  Dr. Clark reported that, based on the MRI findings and plaintiff's continued complaints of pain, he did not feel plaintiff would be able to return to work as a truck driver. The doctor's notes from both visits were forwarded to Hartford via plaintiff's attorney, and Hartford treated the receipt of such as an appeal of its earlier denial.  Hartford then requested of Dr. Clark a letter explaining whether plaintiff's restrictions had changed and why the restrictions placed on plaintiff would, in the doctor's opinion, prevent plaintiff from returning to his job. Hartford also requested copies of the MRI report mentioned in Dr. Clark's notes of June 15, 1998.  Neither Dr. Clark nor plaintiff's attorney ever responded to Hartford's request.  Hartford obtained a job description from Wal-Mart Stores, Inc. for the position of truck driver and obtained a job analysis of the duties required to perform the essential duties of that job.  The job description and analysis, Hartford determined, confirmed that plaintiff should be able to perform the essential duties of his regular job within the restrictions placed by Dr. Clark.

Plaintiff was informed, on September 17, 1998, through his attorney, that Hartford had reviewed the additional materials, but found no information indicating that plaintiff remained totally disabled as defined by the plan. Specifically, Hartford found that because the restrictions on plaintiff had not changed, plaintiff should not be prevented from performing the essential functions of his job. By letter dated November 11, 1998, plaintiff's attorney notified Hartford that following the September 17, 1998 letter, plaintiff had been awarded social security disability benefits by the Social Security Administration and requested a complete review of plaintiff's claim. Hartford notified plaintiff through his attorney that Hartford's determination was unchanged by the Social Security Administration's decision, noting that such a determination is independent of disability under Hartford's and that Hartford's determination was based on documentation in Hartford's file as of March 31, 1998.

## Motion for Summary Judgment

### A.  Scope of Review

In reviewing a motion for summary judgment, the motion is granted if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama, 941 F.2d 1428, 1437

(11th Cir. 1991).  As there is no genuine issue as to any material fact, the only question left to be resolved is whether plaintiff has stated any claim under which he can recover.

**B.   Standard of Review for Fiduciary Decisions**

From the outset, it must be stated that plaintiff's claims for breach of contract and bad faith refusal to pay benefits relate to an employee welfare benefit plan governed by ERISA.  These claims are preempted by ERISA, and as such, plaintiff is left only with a claim for benefits originally due under the ERISA governed plan.

In determining whether the motion for summary judgment should be granted as to plaintiff's claim for benefits, the claim decision "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."   Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989).  When an administrator or fiduciary has been given such discretionary power, the court may only review the actions of a fiduciary under the arbitrary and capricious standard of review. Id.  The arbitrary and capricious standard requires the court "to determine whether there was a reasonable basis for [Hartford's] decision, based upon the facts known to the administrator at the time the decision was made."  Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989). In light of

the fact that a conflict of interest may exist in the present case, this court must first determine if plaintiff has proposed a sound interpretation of the plan to rival Hartford's interpretation. Florence Nightingale Nursing Service, Inc. v. Blue Cross & Blue Shield of Alabama, 41 F.3d 1476, 1481 (11th Cir.), cert. denied, 115 S. Ct. 2002 (1995); Lee v. Blue Cross & Blue Shield of Ala., 10 F.3d 1547, 1550 (11th Cir. 1994); Brown v. Blue Cross & Blue Shield of Ala., 898 F.2d 1556, 1570 (11th Cir. 1990).  If the claimant has established a reasonable interpretation, the court must determine whether Hartford was arbitrary and capricious in adopting a different interpretation.  Florence Nightingale, 41 F.3d at 1481; Lee, 10 F.3d at 1550; Brown, 898 F.2d at 1570.  Likewise, if the plan beneficiary is successful in demonstrating substantial conflict of interest on the part of the fiduciary, the fiduciary must also prove that its interpretation was not tainted by self-interest.  Brown, 898 F.2d at 1566-67.

C.  Application

Hartford interpreted the definition of "total disability" as defined in the plan and determined that plaintiff's disability did not rise to the level of "total disability.  Using the facts before Hartford at the time of its decision, it was neither arbitrary nor capricious for Hartford to determine that plaintiff's disability did not rise to the level of "total disability."   Hartford

prudently solicited additional information when plaintiff sought an

appeal.  When Hartford did not receive a response, it weighed the

evidence before it, reasonably reconciled the inconsistencies, and

rendered a reasonable determination of whether the plaintiff met

the plan's definition of "total disability."  See Brown, 898 F.2d

at 1571-72; See also Paramore v. Delta Airlines, Inc., 129 F.3d

1446, 1447-1452 (11th Cir. 1997). In addition, plaintiff failed to

demonstrate any conflict of self-interest on the part of Hartford

thus we need not take the discussion of conflict of interest any

further.[2]

Plaintiff relies on the workers' compensation judgment and the

award of benefits by the Social Security Administration for his

interpretation of the plan.  As to the workers' compensation

judgment, plaintiff asserts that the judgment establishes, via the

doctrine of collateral estoppel, that plaintiff meets the

definition of "total disability" as defined in the plan.  Alabama

law requires substantial identity of parties for one lawsuit to

have preclusive effect upon the other, and the notion of

---

[2] If plaintiff had demonstrated any self-interest on the part of Hartford, this would not automatically warrant a finding against Hartford or the elimination of any degree of deference. Even a reasonable but "incorrect" determination by a conflicted decisionmaker will be accorded deference if it is concluded that the determination nevertheless was made in good faith. Lee, 10 F.3d 1547. From the facts presented, it does appear that Hartford's determination was made in good faith.

substantial identity of parties extends as well to persons or entities in privity with those who did litigate in former actions. Hurt v. Pullman, Inc., 764 F.2d 1443, 1447 at n.4 (11th Cir. 1985).[3] For a party to be bound by or take advantage of a prior suit, that party or its privity must not only have been present in both suits, but also it has to appear in the same capacity in both suits.  Id. Collateral estoppel cannot be asserted against Hartford, which was not a party to the workers' compensation action, nor is it in privity with, nor shares a substantial identity of interest or capacity with Wal-Mart. See Id.

In addition, plaintiff's contention that the Social Security Administration's award of benefits operates as collateral estoppel is also without merit.  A Social Security award is not dispositive in an ERISA determination, and as such, it cannot be asserted as collateral estoppel, nor is it entitled to deference by Hartford in determining plaintiff's eligibility for disability benefits.  See Paramore, 129 F.3d 1446.

Finally, in plaintiff's only response to defendant's motion for summary judgment, plaintiff requests of this court things on

---

[3] Alabama law on collateral estoppel governs this determination because, under the full faith and credit statute, a federal court will afford a state court judgment the same preclusive effect that would be given to that judgment under the law of the state in which the judgment was rendered.  28 U.S.C. § 1738; Hurt, 764 F.2d at n.4.

which this court has already ruled.  Plaintiff asks this court to
deny or postpone ruling on this motion due to defendant's failure
to answer discovery, as already petitioned in his Motion to Compel
filed June 10, 1999.  Likewise, also as already petitioned on June
10, 1999, plaintiff asks this court to remand this matter to
Hartford for a new determination of eligibility and asserts, as
grounds for such request, Hartford's failure to review the workers'
compensation judgment and the medical depositions of plaintiff's
treating doctors or the vocational disability report of Dr. Crunk.
The court need not once again address these requests. The requests
are untimely in that this court, on June 16, 1999, overruled and
denied, respectively, these requests.

### Conclusion

Summary judgment is appropriate as to plaintiff's claims.
Thus, as established above and as set out in the accompanying
order, this court is today granting the defendant's Motion for
Summary Judgment.

DONE this 7th day of January 2000.

                                        _____
                                              SENIOR JUDGE